IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRAD ANKNEY,                          )
                                      )
            Plaintiff,                )
                                      )
      v.                              )   Civil Action No. 10-1290
                                      )
BARBARA WAKEFIELD and ATHENA          )
PETROLIAS,                            )
                                      )
            Defendants.               )
                                      )

MEMORANDUM

Gary L. Lancaster                          June 19, 2012
Chief Judge.

        This is an action in civil rights.  Plaintiff, Brad

Ankney, brings a First Amendment retaliation claim under 42

U.S.C. § 1983 against defendants, Barbara Wakefield and Athena

Petrolias.  The court granted defendants' motion to dismiss as

to plaintiff's state law claims for retaliation in violation of

Pennsylvania's Whistleblower Act and for tortious interference

with contract. [Doc. No. 20.]  Defendants now move for summary

judgment on the First Amendment retaliation claim, which is

plaintiff's only remaining claim.  [Doc. No. 60.]

        Defendants  argue  that  plaintiff  has  failed  to

establish a prima facie case of First Amendment retaliation

because the speech at issue was not protected by the First

Amendment and it was not a substantial factor in the alleged

retaliation.   Defendants also argue that they would have taken the same action in the absence of plaintiff's speech.

Plaintiff failed to file a timely response to defendants' motion for summary judgment and, for the reasons set forth in the court's June 5, 2012 Memorandum Order [Doc. No. 79], his motion to file an untimely response was denied.

For the following reasons, defendants' motion for summary judgment will be granted.


I.   FACTUAL BACKGROUND

Consistent with the court's June 5, 2012 Memorandum Order [Doc. No. 79], the material facts set forth below are drawn primarily from defendants' concise statement of material facts [Doc. No. 62].   As discussed in the June 5 Memorandum Order, instead of filing a summary judgment response as required by the Local Rules, plaintiff filed a motion to strike certain facts relied on by defendants.   The court construed the motion to strike as objections to the facts plaintiff argued were inadmissible.   [Doc. No. 74].   Defendants responded to those objections, arguing that each contested fact is admissible. [Doc. No. 75.]   Pursuant to Local Rule 56E and the June 5, 2012 Memorandum Order, those facts not objected to by plaintiff were deemed admitted.

Plaintiff's objections were directed at defendants' facts regarding plaintiff's employment history and relationships with his colleagues. Plaintiff argued that these facts were either inadmissible hearsay, immaterial, or improper characterizations presented as fact. While defendants have addressed the objections as to the admissibility of this evidence, it remains "evident from the pleadings" and other supporting documents that many of these facts, regardless of their admissibility, are disputed by plaintiff. See Ullrich v. U.S. Sec'y of Veterans Affairs, 457 Fed. App'x. 132, 137 (3d Cir. 2012). The disputed nature of those facts, however, does not preclude the court from addressing the merits of the claim based on the undisputed facts properly before the court under our Local Rules. See id. (citing Anchorage Assocs. v. V.I. Bd. Of Tax Review, 922 F.2d 168, 175 (3d Cir. 1990)). Accordingly, the court will now recount those undisputed material facts - as well as allegations in the complaint necessary to provide context - that will permit resolution of this matter on the merits.

### A. Material Facts

Mr. Ankney began working for the Allegheny Intermediate Unit ("AIU") as a teacher in 2000. Defendant Barbara Wakefield was the AIU's Principal during the events that

gave rise to this action.   Defendant Athena Petrolias served as the Director of Alternative Education for the AIU during that time.

Mr. Ankney stated that it was his "personal professional goal" to refer dangerous student behavior and contraband to AIU administrators for confiscation and disciplinary action.   On or about October 22, 2008, Mr. Ankney first notified Ms. Wakefield of his concern regarding student possession of illegal and dangerous weapons.   At this time, he was working as a teacher with the AIU's Alternative Education Program, which included students involved with the juvenile justice system and those found to be disruptive by their school districts.   On November 3, 2008, Mr. Ankney confiscated a knife from a student.   He alleges that he reported the incident to Ms. Wakefield and Ms. Petrolias that day.   Mr. Ankney believes that Ms. Wakefield failed to follow the AIU's written policy regarding possession of weapons, and failed to discipline the student appropriately.

Shortly thereafter, on November 6, 2008, Mr. Ankney emailed Ms. Wakefield, copying Ms. Petrolias, to state his interest in promoting school safety, and in increasing efforts to find weapons on students.   [Doc. 1, Ex. 4.]   Mr. Ankney's email referenced two weapons incidents – one involving a suspected gun, and the November 3 confiscated knife incident –

4

and expressed his concern that safety was not considered more
important than keeping students in the classroom.   Mr. Ankney
wrote:

> Some of my concerns are the lack of anyone
> referring me to the AIU Policy Series 2650
> regarding "Weapons in the Workplace" and your
> administrative support in carrying out those
> procedures, the reluctance of anyone to remove
> the student from the classroom and the failure to
> notify of [sic] law enforcement.   My primary
> concern is for safety in my classroom and I would
> appreciate your support in helping be more
> proactive in future incidents involving weapons
> or students suspected of having weapons.

[Doc. 1, Ex. 4.]   Several days after sending this email, on
November 10, 2008, Mr. Ankney confiscated a set of brass
knuckles from a student.

Mr. Ankney then sent a memorandum, dated December 1,
2008, to Mr. Donald Smith, Jr. of the Center for Safe Schools.[1]
[Doc. 1, Ex. 5.]   The memorandum provided background on Mr.
Ankney's role with the AIU and the student population of the
AIU's Alternative Education Program.   Mr. Ankney stated his
reason for contacting CSS:

> I am currently alarmed at the culture that has
> been created in our school that not only
> tolerates, but often overlooks, covers up and/or
> rewards unsafe, unruly, disorderly and has now
> lead [sic] up to dangerous behavior in our

---

[1]   The record does not contain background information on the
Center for Safe Schools, e.g., its mission, affiliation (or
lack thereof) with the government, organizational
structure, or mandate.

students. Recent incidents have me seriously
concerned for the safety of my students and
others in our school.

[Doc. 1, Ex. 5, p. 1.] Mr. Ankney then identified the AIU

Principal, Ms. Wakefield, as an obstacle to achieving his goal

of school safety:

> I have been trying to get help from our principal
> with these unsafe situations but she fails to
> take safety seriously and has been working hard
> to discourage me from speaking out on safety
> issues. The apathetic attitude of our principal,
> and others have lead [sic] to a school
> environment that is unhealthy, unsafe and not
> conducive to learning.

[Doc. 1, Ex. 5, p. 1.] The memorandum then recounted specific

incidents involving unsafe student behavior taking place at the

AIU from November 3, 2008 to November 10, 2008. Mr. Ankney

provided his opinion on the administration's response to these

incidents. For example, according to the memorandum, a student

pulled out a "large knife" in a classroom, a student announced

in class that he "carries a gun on him at all times", and a

student came to class wearing brass knuckles. Mr. Ankney stated

that he reported these incidents to Ms. Wakefield and others,

but was unsatisfied with the lack of a response. The memorandum

also notes that after growing "increasingly concerned about the

lack of seriousness with which safety issues" were handled at

the AIU, Mr. Ankney emailed a memorandum to Ms. Wakefield's

superiors "seeking support in implementing safety measures" in the AIU.

After the specific examples of what he considered improper handling of dangerous incidents, Mr. Ankney reiterated his position that the actions of the administration were "inadequate" and "unprofessional" and that the administration pressured him and other staff to remain silent about safety issues.  Mr. Ankney concluded the memorandum by asking for "any help" the CSS could provide, including referring him to another outside party for assistance.  When asked at his deposition why he submitted the memorandum to CSS, Mr. Ankney stated:  "Because I was afraid for the safety of my students in that school, and didn't feel I was getting adequate support from administration." [Ankney Deposition, p. 160.]

During the same timeframe as Mr. Ankney's safety complaints, he was involved in disciplinary proceedings stemming from a report that he was hostile to a colleague.  On November 21, 2008, two staff members complained to Ms. Wakefield that Mr. Ankney had an outburst during a staff meeting.  According to the staff members' report, Mr. Ankney became enraged during the meeting, yelled, and directed profanity at a fellow teacher. Accompanied by Alternative Education Program Administrator John Boozel, Ms. Wakefield interviewed all staff members present at the meeting in question.

On November 24, 2008, then AIU Human Resources Director, William Addy, informed Mr. Ankney that he was being suspended with pay while his behavior at the November 21 staff meeting was being investigated. After a Loudermill hearing, Mr. Ankney was suspended without pay for eight days. In response, he filed a grievance, which led to arbitration. The arbitrator overturned the suspension, concluding that Mr. Ankney and the other teacher had engaged in an argument. This suspension, according to the complaint, was one of several instances of AIU retaliation for Mr. Ankney's communications regarding school safety.

## II.   LEGAL AUTHORITY

The court shall grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the moving party meets its burden of proving that no genuine issue of material fact exists, then the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'". Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and

draw all reasonable inferences in that party's favor. Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). In ruling on a motion for summary judgment, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51 (2000) (citing cases).

The mere existence of some evidence in support of the nonmoving party will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue under the governing substantive law. See Anderson v. Liberty Lobby, 477 U.S. at 248-49. Moreover, a party opposing summary judgment "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." Podobnik v. United States Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If the nonmoving party fails to make a sufficient showing on an essential element of its case on which it has the burden of proof, the moving party is entitled to judgment as a matter of law. Celotex, 477 U.S. at 322-23.

In summary, the inquiry in ruling on a Rule 56 motion is whether the evidence of record presents a genuine dispute over material facts so as to require submission of the matter to a jury for resolution of that factual dispute, or whether the evidence is such that the movant must prevail as a matter of law.


III. DISCUSSION

To advance a First Amendment retaliation claim beyond summary judgment, a plaintiff must identify facts sufficient to support the two elements of the claim: "(1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action." Hill v. Borough of Kutztown, 455 F.3d 225, 241 (3d Cir. 2006). If plaintiff identifies such facts, "the burden shifts to the defendants to demonstrate that the same action would occur if the speech had not occurred." Gorum v. Sessoms, 561 F.3d 179, 184 (3d Cir. 2009).

Defendants argue that summary judgment should be entered in their favor because Mr. Ankney's allegedly protected speech was made pursuant to his official duties, because that speech did not motivate the allegedly retaliatory conduct, and because defendants would have taken the same actions in the absence of Mr. Ankney's speech. Mr. Ankney asserts in his complaint that his November 6, 2008 email to defendants and his

December 1, 2008 memorandum to CSS were protected speech.   He also contends that defendants retaliated against him because of this speech, including by, among other things, suspending him without pay for eight days and giving him an unsatisfactory employee rating.

"The threshold inquiry when analyzing a retaliation claim is whether the speech in question is protected by the First Amendment."   Brown v. Montgomery County, No. 11-2130, 2012 WL 942645, at *1 (3d Cir. Mar. 21, 2012).   "A public employee's statement is protected . . . when, (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have an adequate justification for treating the employee differently from any other member of the general public as a result of the statement he made."   Gorum, 561 F.3d at 185 (internal quotation omitted).

The first question in determining whether Mr. Ankney engaged in protected speech is whether he spoke as a citizen. Public employees do not speak as citizens for First Amendment purposes when they "make statements pursuant to their official duties[.]"   Garcetti v. Ceballos, 547 U.S. 410, 421 (2006). Determining what responsibilities constitute a public employee's "official duties" is a practical inquiry, and not limited to the terms of the employee's job description.   Id. at 424.   Refining

11

this standard, the United States Court of Appeals for the Third
Circuit has held that "a claimant's speech might be considered
part of his official duties if it relates to 'special knowledge'
or 'experience' acquired through his job." Gorum, 561 F.3d at
185 (internal quotation omitted).

In his complaint, plaintiff asserts that two
communications he sent regarding school safety constitute
protected speech. [Doc. 1 at ¶¶ 34 and 46.] The first
communication is the November 6, 2008 email plaintiff sent to
defendant Barbara Wakefield with a copy to defendant Athena
Petrolias. [Doc. 1, Ex. 4.] The second communication is the
December 1, 2008 memorandum he wrote to Mr. Smith of CSS. [Doc.
1, Ex. 5.] Because both communications are based on Mr.
Ankney's special knowledge and experience as a teacher, and
written for the purpose of fulfilling his responsibilities as a
teacher, the court concludes he was not speaking as a citizen.

Both communications focus on unsafe conditions at the
school, weapons incidents involving students, and the lack of
administrative support in dealing with those incidents. The
email's discussion of the two weapons incidents and the
memorandum's timeline of safety incidents demonstrate that Mr.
Ankney was acting on knowledge and experience unique to his
position as a teacher. He had firsthand knowledge of unsafe
incidents, of how he reported those incidents to his superiors,

and of how they responded.   Furthermore, Mr. Ankney viewed both the November 6, 2008 email and the December 1, 2008 memorandum as related to his duties to teach and to ensure student safety. [Ankney Deposition, pp. 106-07 and 161-62.]

The December 1, 2008 memorandum differs from the November 6, 2008 email in that it was directed to CSS, not Mr. Ankney's supervisors at the AIU.   This difference, however, does not compel the conclusion that Mr. Ankney spoke as a citizen when he drafted it.   The applicable case law does not suggest that the speaker's intended audience bears on whether the speech was related to his official duties.   The test remains whether the speech relates to the special knowledge or experience Mr. Ankney acquired as a teacher at the AIU.   See Gorum, 561 F.3d at 185.   Under that standard, the December 1, 2008 memorandum is not private citizen speech, although addressed to an outside agency, because Mr. Ankney discusses particular safety incidents at the AIU with the goal of showing that his supervisors are not acting to keep the AIU safe.

The two communications for which Mr. Ankney claims First Amendment protection are similar to the unprotected employee speech in Foraker v. Chaffinch, 501 F.3d 231 (3d Cir. 2007).[2]   There, instructors in the Firearms Training Unit of the

---

[2]      The decision in Foraker was abrogated by Borough of Duryea, Pa. v. Guarnieri, 131 S.Ct. 2488, __ U.S. __ (2011), but

Delaware State Police reported hazardous conditions at a firing range, including an unsafe bullet trap. Id. at 233. They made safety reports both to their superiors and the State Auditor, and were subsequently placed on light duty. Id. at 233-34. The United States District Court for the District of Delaware dismissed their claims after trial based on Garcetti, which was decided the same day the jury was charged. Id. at 234. The officers argued that the district court erred because, as firearms instructors, reporting health and safety problems was not part of their job. Id. at 238. The U.S. Court of Appeals for the Third Circuit affirmed the dismissal, reasoning that the officers:

> [W]ere acting within their job duties when they expressed their concerns up the chain of command because they needed to have a functioning bullet trap to conduct their educational programs and it was their special knowledge and experience with the bullet trap that demonstrated their responsibility for ensuring its functionality[.]

Id. at 240 (footnote omitted). That reasoning is equally applicable in this case because Mr. Ankney needed to have a functioning classroom in order to conduct his teaching duties, and it was his special knowledge and experience in the classroom

---

only with respect to the rule in the United States Court of Appeals for the Third Circuit that the Petition Clause protects public employees from retaliation for petitions involving only private concerns. The abrogation of Foraker does not affect the analysis in this case.

that formed the basis for his reports to the AIU administration
and CSS.

But the similarity in the nature of the speech in this
case and in Foraker - reports of unsafe conditions in the
workplace - is not dispositive.   The court in Foraker observed
that "the question of whether a particular incident of speech is
made within a particular plaintiff's job duties is a mixed
question of fact and law."   Id. at 240.   Here, there are
sufficient undisputed facts to reach the conclusion that
reporting safety issues was within Mr. Ankney's job description.
Mr. Ankney testified that ensuring school safety was his duty as
a teacher and that "[s]tudents absolutely need to be safe to
learn."   [Ankney Deposition, pp. 106-07.]   Mr. Ankney's own
understanding of his job responsibilities encompassed reporting
unsafe conditions in order to have them remedied.   Accordingly,
his reports fall within a practical understanding of his
official duties.   See Gorum, 561 F.3d at 185 (quoting Garcetti,
547 U.S. at 424).   The November 6, 2008 email and the December
1, 2008 memorandum are, therefore, not private citizen speech
entitled to First Amendment protection.

Because the conclusion that Mr. Ankney's speech was
not protected by the First Amendment is dispositive, defendants'
motion for summary judgment will be granted.   See Foraker, 501

F.3d at 243 (declining to analyze remaining First Amendment retaliation factors after concluding speech was not protected).


IV.   CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment will be granted.   An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRAD ANKNEY,                        )
                                    )
            Plaintiff,              )
                                    )
      v.                            )   Civil Action No. 10-1290
                                    )
BARBARA WAKEFIELD and ATHENA        )
PETROLIAS,                          )
                                    )
            Defendants.             )
                                    )

## ORDER

AND NOW, this 19 day of June, 2012, IT IS HEREBY ORDERED

that Defendants' Motion for Summary Judgment [Doc. No. 60] is

GRANTED.

BY THE COURT,

_____, C.J.

cc:  All Counsel of Record